UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHATTAHOOCHEE RIVERKEEPER, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action File No. _____ |
| A&R IRONWORKS, LLC, and ARNWORKS PROPERTIES LLC, | ) ) ) | |
| Defendants. | ) | |

**COMPLAINT AND PETITION FOR INJUNCTIVE RELIEF**

**Nature of Action**

1.

This action is a citizen suit brought pursuant to section 505 of the Clean Water Act, 33 U.S.C. § 1251, et seq. (the "CWA"). Plaintiff Chattahoochee Riverkeeper, Inc. ("CRK") seeks a declaratory judgment, injunctive relief, the imposition of civil penalties of up to $54,833 per day for each violation, and the award of attorney's fees and expenses of litigation for the repeated and ongoing violations by the Defendants A&R Ironworks, LLC ("A&R") and Arnworks Properties LLC (the "Defendants") of sections 301(a) and 402 of the CWA, 33

U.S.C. §§ 1311(a) and 1342, relating to the unlawful discharge of pollutants into Burnt Fork Creek, Peachtree Creek, and the Chattahoochee River.

**Jurisdiction and Venue**

2.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 33 U.S.C. § 1365(a).

3.

Pursuant to 33 U.S.C. § 1365(b), CRK has provided adequate notice to Defendants of the violations that are the subject of this lawsuit, with copies to the persons designated under the applicable regulation, 40 C.F.R. § 135.  (April 26, 2019 Letter from Andrew M. Thompson to Defendants, a true and correct copy of which is attached hereto as Exhibit "A").

4.

More than sixty days have passed since notice of the violations was served, and the violations complained of are continuing or reasonably likely to continue.

5.

The CWA violations alleged herein occurred and will continue to occur in the Northern District of the State of Georgia. Venue is proper in this Court pursuant to 33 U.S.C. § 1365(c)(1) and 28 U.S.C. § 1391.

6.

The unlawful discharge of pollutants by the Defendants are ongoing violations of sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342. The violations will continue absent intervention by the Court.

## Parties

7.

CRK is a nonprofit corporation organized under the laws of the State of Georgia with more than 9,300 members, and its primary office in Atlanta, Georgia. CRK's mission is to advocate and secure the protection and stewardship of the Chattahoochee River and its tributaries and watershed, in order to restore and conserve their ecological health for the people, fish and wildlife that depend on the river system.

8.

Defendant A&R Ironworks, LLC ("A&R") is a Georgia company with its principal office address listed with the Georgia Secretary of State as 3350 Montreal Station, Tucker, Georgia 30084, and is a "person" subject to suit under the CWA, 33 U.S.C. §§ 1362(5) and 1365(a).  A&R may be served with process by delivering this complaint and summons to its registered agent, John C. Chesnutt,

3350 Montreal Station, Tucker, Georgia 30084.  A&R is subject to the jurisdiction of this Court.

9.

Defendant Arnworks Properties LLC ("Arnworks") ") is a Georgia company with its principal office address listed with the Georgia Secretary of State as 3350 Montreal Station, Tucker, Georgia 30084, and is a "person" subject to suit under the CWA, 33 U.S.C. §§ 1362(5) and 1365(a).  Arnworks may be served with process by delivering this complaint and summons to its registered agent, John C. Chesnutt, 3350 Montreal Station, Tucker, Georgia 30084.  Arnworks is subject to the jurisdiction of this Court.

**Standing**

10.

Defendant A&R operates and Defendant Arnworks owns an industrial facility located at 3350 Montreal Station, Tucker, Georgia 30084 (the "Site") and the discharge of pollutants without a permit from industrial activities at the Site has unlawfully and negatively impacted Burnt Fork Creek, Peachtree Creek, and the Chattahoochee River.

11.

The tributaries to the Chattahoochee River are a significant part of the Chattahoochee River system.  CRK members recreate and fish in, on, and near Burn Fork Creek, Peachtree Creek and the Chattahoochee River downstream of the discharge of Defendants.  The quality of Burnt Fork Creek, Peachtree Creek and the Chattahoochee River and its tributaries affects the recreational, aesthetic, and environmental interests of CRK's members.

12.

CRK members have suffered injuries to their recreational, aesthetic and environmental interests due to the continued unpermitted discharge of pollutants by Defendants into Burnt Fork Creek, Peachtree Creek, and the Chattahoochee River.  In particular, the ability of CRK members to utilize Burnt Fork Creek, Peachtree Creek, and the Chattahoochee River for recreational activities has been adversely affected due to the degradation of the water quality and the destruction of aquatic life.

13.

The injuries of CRK's members are directly traceable to Defendants' acts and omissions alleged herein.

14.

CRK members have been and continue to be injured as a result of Defendants' acts and omissions and these injuries are likely to be redressed by the requested relief.  CRK's interest in this proceeding falls squarely within the zone of interests protected by the CWA.

**Facts Common to All Counts**

15.

In 1972, Congress passed the CWA, "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).

16.

The CWA provides that any citizen may commence a civil action on his own behalf against any person who is alleged to be in violation of an effluent standard or limitation under the CWA.  33 U.S.C. § 1365(a)(1)(A).

17.

Burnt Fork Creek, Peachtree Creek, and the Chattahoochee River constitute waters of the State of Georgia for purposes of the Georgia Water Quality Control Act (the "GWQCA"), O.C.G.A. § 12-5-20 *et seq.*, and waters of the United States for purposes of the CWA.

18.

Defendant Arnworks is the owner of the Site at which Defendant A&R conducts industrial activities, including but not limited to the manufacturing and fabrication of architectural metalwork. Large amounts of industrial materials, including but not limited to metal, aggregate, concrete, and gravel, are stored and stockpiled outside and exposed to rain at the Site. As rain comes into contact with the materials, it picks up pollutants and transports them in storm water to nearby waters, including Burnt Fork Creek.

19.

In addition, as rain falls on exposed soil at the Site, it causes erosion and sedimentation and the resulting discharge of pollutant-laden storm water into nearby waters, including Burnt Fork Creek.

20.

As an example, representatives of CRK witnessed the discharge of orange, turbid storm water associated with industrial activities from the Site to Burnt Fork Creek on November 9, 2018, and similar discharges of pollutant-laden storm water have occurred, and will continue to occur, each time that it rains.

## **Regulatory Context and Georgia's General Permit for Discharges of Storm Water from Industrial Activities**

21.

Section 301 of the CWA prohibits the discharge of pollutants from point sources into "waters of the United States" except in accordance with standards promulgated and permits issued under other sections of the CWA. 33 U.S.C. § 1311(a).

22.

The CWA makes it unlawful for any person to discharge a pollutant from a point source in violation of a National Pollution Discharge Elimination System ("NPDES") permit. 33 U.S.C. § 1342.

23.

"Discharge of a pollutant" is defined in the CWA as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

24.

Under the NPDES, the EPA issues permits for the discharge of pollutants into waters of the United States where certain conditions are met. 33 U.S.C. § 1342. This permitting authority has been delegated to the Georgia Environmental Protection Division (the "EPD") pursuant to 33 U.S.C. § 1342.

25.

The EPD issues NPDES permits to qualifying entities under authority granted by O.C.G.A. § 12-5-30.

26.

On August 1, 2006, the General NPDES Permit for Discharges of Storm Water from Industrial Activities, GAR000000 (the "General Permit"), became effective in Georgia and a revised version was reissued as GAR050000 and became effective on June 1, 2017.   The General Permit requires owners and operators of an industrial facility, such as Defendants, to file a notice of intent under the General Permit and comply with the provisions of the General Permit.

## Count I – Discharge of Pollutant-Laden Stormwater in Violation of the CWA, 33 U.S.C. §§ 1311 & 1342

27.

CRK repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

28.

As described above, Defendants have discharged, and continue to discharge, pollutants in storm water through point sources into waters of the United States from industrial activities at the Site.

29.

Despite the discharge of pollutant-laden storm water from the Site, Defendants failed to file a notice of intent under the General Permit to discharge storm water from industrial activities at the Site and Defendants did not obtain an individual NPDES permit for a point source discharge.

30.

The Defendants' continuing discharge of pollutants in storm water from industrial activities at the Site without a permit violates the CWA, 33 U.S.C. §§ 1311 and 1342, and federal regulations.

31.

Further, Defendants have failed to comply with the provisions of the General Permit in regard to the activities that have taken and are taking place at the Site.

32.

Part 5 of the General Permit requires that Defendants prepare a Storm Water Pollution Prevention Plan for the industrial activities at the Site.

33.

Defendants have failed to prepare a Storm Water Pollution Prevention Plan in accordance with Part 5 of the General Permit.

34.

Part 6 of the General Permit requires that Defendants conduct storm water sampling and monitoring in accordance with the Permit.

35.

Defendants have failed to conduct storm water sampling and monitoring in accordance part 6 of the General Permit.

36.

Part 7 of the General Permit requires that Defendants provide monitoring data, annual reports, and additional reporting to EPD.

37.

Defendants have failed to provide monitoring data, annual reports, and additional reporting to EPD in accordance with part 7 of the General Permit.

38.

Part 4 of the General Permit requires that Defendants conduct regular inspections of the Site.

39.

Defendants have failed to conduct inspections of the Site in accordance with Part 4 of the General Permit.

40.

Part 7.5 of the General Permit requires that Defendants retain records relating to its storm water and storm water control practices.

41.

Defendants have failed to retain records in accordance with Part 7.5 of the General Permit.

42.

Parts 6.3.1 and 7.3 of the General Permit require that Defendants document and report violations of the General Permit to the EPD.

43.

Defendants have failed to document and report violations of the General Permit to EPD in accordance with Parts 6.3.1 and 7.3 of the General Permit.

44.

Parts 2.1 of the General Permit requires that Defendants properly design, install, and maintain adequate control measures, including best management practices ("BMPs"), for storm water at the Site.

45.

Defendants have failed to properly design, install, and maintain adequate control measures, including BMPs, for storm water at the Site, as required by the General Permit.

46.

Part 3 of the General Permit requires that Defendants conduct appropriate corrective actions upon the occurrence of any of the conditions set forth in Parts 3.1 and 3.2 of the General Permit.

47.

Defendants have failed to conduct appropriate corrective actions as required by Part 3 of the General Permit

48.

The above-described violations are ongoing, have occurred daily and continued from day to day at least since the effective date of the revised General Permit, June 1, 2017, and are unlawful under the CWA, 33 U.S.C. §§ 1311 and 1342, the GWQCA, and federal and state regulations.

49.

As a result of Defendants' ongoing violations of sections 301 and 402 of the CWA, Defendants are subject to civil penalties of up to $54,833 per day for each

violation pursuant to 33 U.S.C. § 1319(d), 40 C.F.R. § 19.4, and 84 Fed. Reg. 2056 (February 6, 2019).

50.

Substantial and irreparable harm to CRK and its members has occurred and will continue to occur if preliminary and permanent injunctions are not issued enjoining Defendants from discharging storm water from the Site until Defendants comply with the provisions of the General Permit.

WHEREFORE, CRK demands a jury trial on all issues triable to a jury, and respectfully requests this Court to grant the following relief:

(a)     Enter a declaratory judgment declaring that:

(i)     Defendants have engaged in the illegal discharge of pollutants into the waters of the United States since at least the effective date of the revised General Permit, June 1, 2017.

(ii)    Defendants have been and are in violation of the CWA, 33 U.S.C. §§ 1311 and 1342;

(b)     Issue preliminary and permanent injunctions prohibiting Defendants and any of their lessees, agents, employees, successors or assigns from conducting any activities that constitute, continue, or may result in the discharge of storm water from the Site, directly or indirectly,

14

into Burnt Fork Creek, unless and until Defendants comply with the provisions of the General Permit;

(c)     Issue a permanent injunction requiring Defendant to remove the silt, sediment, and other materials deposited from the Site into Burnt Fork Creek;

(d)     Enter a judgment assessing against Defendants civil penalties in the amount of $54,833 per day for each violation pursuant to 33 U.S.C. § 1319(d), 40 C.F.R. § 19.4, and 84 Fed. Reg. 2056 (February 6, 2019).

(e)     Award CRK its costs and expenses of this action including reasonable attorneys' fees and expert witness fees pursuant to the CWA, 33 U.S.C. § 1365(d); and

(f)     Award such additional relief as this Court deems just and proper.

This 27th day of June, 2019.

Respectfully submitted,

SMITH, GAMBRELL & RUSSELL, LLP

*/s/ Andrew M. Thompson*
Andrew M. Thompson
Georgia Bar No. 707319
Vickie C. Rusek
Georgia Bar No. 487697

Suite 3100, Promenade
1230 Peachtree Street, NE
Atlanta, Georgia 30309-3592
Telephone: (404) 815-3500          Attorneys for Plaintiff Chattahoochee
Facsimile: (404) 685-7001          Riverkeeper, Inc.